# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01648-SCT

*GEORGE E. TRIM*

*v.*

*LISA MOSLEY TRIM*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2007 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM LEE COLBERT, JR. |
| ATTORNEYS FOR APPELLEE: | KIMBERLY PINE TURNER |
| | RANDALL HARRIS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REINSTATED AND AFFIRMED - 04/29/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     George E. Trim and Lisa Mosley Trim obtained an irreconcilable-differences divorce by order of the Chancery Court for the First Judicial District of Hinds County on June 14, 2000.  Lisa was not represented by counsel in the divorce proceeding, and neither party propounded discovery beyond the mandatory Uniform Chancery Court Rule 8.05 financial disclosure statements.  On November 19, 2004, Lisa filed a "Petition to Set Aside the Final

Judgment of Divorce and/or Property Settlement Agreement on the Allegation of Fraud."

In the petition, Lisa asserted that George fraudulently had misrepresented the value of his corporate stock, a marital asset, to be $100,000 in his Rule 8.05 financial disclosure statement. The chancellor granted the petition, finding that the elements of fraud were met by clear and convincing evidence and that the actual value of the corporate stock at the time of the divorce had been $694,000. Subtracting the $100,000 that had been equitably distributed in the divorce judgment, the chancellor awarded Lisa twenty-five percent of $594,000 under *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), plus attorneys' fees and costs. George appealed, arguing that Lisa's petition had been untimely filed under Mississippi Rule of Civil Procedure 60(b) and that the chancellor erroneously had found clear and convincing evidence of the elements of fraud. This Court assigned the case to the Court of Appeals.

¶2. A divided Court of Appeals reversed and rendered, finding that Lisa's petition had been untimely filed under Mississippi Rule of Civil Procedure 60(b). *Trim v. Trim*, 2009 WL 1058630, at *5 (Miss. Ct. App. Apr. 21, 2009). The Court of Appeals held that the chancellor erroneously had deemed the petition timely under the catch-all provision in Rule 60(b)(6), under which a motion for relief from a final judgment shall be made within a reasonable time. The Court of Appeals determined that because Lisa's petition alleged fraud, Rule 60(b)(1) applied and that the petition was untimely under that rule's six-month deadline. Having so found, the Court of Appeals declined to reach the merits of the fraud issue. After the Court of Appeals denied Lisa's motion for rehearing, Lisa filed a petition for writ of certiorari, which this Court granted. Lisa raises two issues for decision on certiorari: (1)

2

whether the decision rendered by the Court of Appeals conflicts with prior Court of Appeals decisions and with decisions of this Court, and (2) whether this case involves fundamental issues of broad public importance requiring our review.

¶3. This Court is confronted with a finding by the chancery court that a party to divorce litigation intentionally submitted a substantially false Rule 8.05 financial disclosure statement. The chancellor determined that this misconduct constituted fraud on an adverse party. We take this opportunity to hold that a party's intentional filing of a substantially false Rule 8.05 financial disclosure statement constitutes a fraud on the court, for which there is no limitation of time restricting the court from affording a remedy. Miss. R. Civ. P. 60(b). Therefore, it was within the chancellor's authority to modify the final judgment of divorce. The judgment of the Court of Appeals is reversed, and the judgment of the Chancery Court of Hinds County is reinstated and affirmed.

**FACTS**

¶4. The Court of Appeals provided a thorough recitation of the facts, which we restate:

> On November 16, 1990, George and Lisa were married in Hinds County, Mississippi. No children were born to the marriage. Over the course of their marriage, Lisa worked as a sales representative for the Berry Company selling yellow page advertisements, and George was self-employed in a computer networking and cabling business, Business Communications, Inc., (BCI). In 1993, George and Tony Bailey (Bailey) partnered to form (BCI), which is a closely-held subchapter S for profit corporation. Bailey owned fifty-one percent of the stock, with George owning a minority share of forty-nine percent.
>
> George and Lisa continued to live as husband and wife until their separation in September 1999. Around the time of their separation, George and Lisa discussed their financial status. George thought that the value of his stock in BCI was worth $100,000, and Lisa owned a retirement account valued at $120,000. The equity in George and Lisa's home was $30,000. George

3

proposed that Lisa keep her retirement account; he keep his BCI stock and their home; and he pay Lisa $5,000 to make up the difference. In essence, the couple divided their marital assets equally. After this, on September 24, 1999, Lisa signed a property settlement agreement reflecting the couple's decision.

George and Lisa did not file for divorce until seven months later. On April 10, 2000, George and Lisa filed a Joint Complaint and Consent to Divorce based on irreconcilable differences. They also attached the above property settlement agreement to their complaint. Pursuant to Uniform Chancery Court Rule 8.05 (hereinafter 8.05), each party submitted a financial statement of their assets and liabilities to the court. In his 8.05 statement, George again listed the value of his BCI stock at $100,000. On June 14, 2000, the Hinds County Chancery Court entered a final judgment granting a divorce to George and Lisa and ratified the property settlement agreement attached in the divorce complaint.

Following the divorce, in 2001, the business relationship between George and Bailey began to deteriorate. In July 2001, at a board of directors' meeting, Bailey and a third director voted to fire George as president of the company and reduce his management responsibilities and salary. As a result of being "squeezed out" of the company, George filed suit against Bailey and BCI alleging breach of fiduciary duty and wrongful breach of minority rights. He sought to have the company dissolved. Pursuant to statutory requirements, the Madison County Chancery Court held a hearing to determine the value of George's BCI stock, and the court determined that the better result, rather than to dissolve the company, was to have BCI pay George for his stock and for George to relinquish any rights in BCI. The stock valuations presented in that hearing spurred the present litigation between Lisa and George.

During the litigation between George and Bailey, each party presented expert testimony to determine the value of George's stock, and the chancellor adopted George's expert's finding that the stock was worth $1,186,000 as of August 14, 2001. During the *Trim v. Bailey* litigation, the chancellor expressed dissatisfaction with the determined values because of the disparity of findings between the parties' experts. However, due to the parties' unwillingness to hire a third expert, he felt bound to choose one of the amounts, so he chose the higher value. It is clear that difficulty existed in placing a definitive monetary value on the stock. Rather, determinations were based on numerous factors that were not easily discernible and resulted in vastly different valuations.

Lisa waited until November 19, 2004, to file suit against George claiming that he had fraudulently misrepresented the value of his stock when

they were discussing their property settlement agreement over five years earlier in September 1999.[1] In the **Trim v. Trim** litigation, Lisa hired a third expert, which presented yet another opinion concerning the value of George's stock. Lisa's expert valued George's stock at $694,000 at the time of George and Lisa's divorce. The chancellor accepted this opinion and awarded Lisa 25% of this amount [less the $100,000 that had already been subjected to equitable distribution in the divorce judgment]. In other words, Lisa received an additional $148,000 plus attorneys' fees and costs. The judgment from that litigation is now the subject of this appeal.

*Trim*, 2009 WL 1058630, at *1-2 (footnotes omitted).

## STANDARD OF REVIEW

¶5. This Court reviews judgments in domestic relations cases under the familiar "substantial evidence/manifest error" rule. *Evans v. Evans*, 994 So. 2d 765, 768 (Miss. 2008). We will not disturb the chancellor's findings unless those findings were manifestly wrong, clearly erroneous, or the chancellor applied an incorrect legal standard. *Id.*

## ANALYSIS

¶6. On certiorari, Lisa argues that the Court of Appeals' reversal of the chancellor's modification of the final judgment of divorce conflicted with its prior decisions and that this case involves broad issues of public importance. This case requires the Court to determine whether the chancellor had authority to modify a final judgment of divorce upon a finding that one party fraudulently had misrepresented the value of an asset in the party's Uniform Chancery Court Rule 8.05 financial disclosure statement. Mississippi Rule of Civil Procedure 60 provides, in part:

---

[1] After Lisa learned of the higher stock valuation in 2002, she sought representation from two successive attorneys who failed to take any action in the case; she finally retained a third attorney who filed the instant lawsuit on November 19, 2004.

5

**(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> (2) accident or mistake;
>
> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
>
> (6) any other reason justifying relief from the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. Leave to make the motion need not be obtained from the appellate court unless the record has been transmitted to the appellate court and the action remains pending therein. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.* Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action and not otherwise.

Miss. R. Civ. P. 60(b) (emphasis added).

¶7.     The decision to modify a prior order under Rule 60(b) is a matter within the trial court's sound discretion. ***Accredited Sur. and Cas. Co. v. Bolles***, 535 So. 2d 56, 58 (Miss. 1988).   The first five enumerated clauses of Rule 60(b) allow modification of a final

6

judgment in the specific listed circumstances. Miss. R. Civ. P. 60(b)(1-5). Rule 60(b)(6) provides a "catch-all" provision under which relief may be granted in exceptional and compelling circumstances, such as for fraud upon the court. Miss. R. Civ. P. 60(b); *Tirouda v. State*, 919 So. 2d 211, 214 (Miss. Ct. App. 2005). While a Rule 60(b)(6) motion must be brought within a reasonable time, a motion made under the first three enumerated clauses must be brought within six months of the entry of the final judgment. Miss. R. Civ. P. 60(b). This Court has held that use of Rule 60(b)(6) must be based on some reason other than those listed in the first five enumerated clauses of the rule. *Am. States Ins. Co. v. Rogillio*, 10 So. 3d 463, 474 (Miss. 2009).

### A. The chancellor's decision

¶8. The chancellor determined that George fraudulently had misrepresented the value of his corporate stock to be $100,000 in his Rule 8.05 financial disclosure statement, which was incorporated into the final judgment of divorce on June 14, 2000. In making this finding, the chancellor relied upon the undisputed evidence that, in December 1999, George had submitted a personal financial statement to State Bank and Trust valuing the stock at $1,100,000, and in December 2000, he had submitted another statement to State Bank and Trust valuing the stock at $1,837,500. The chancellor determined that George's submission of a false Rule 8.05 statement constituted perjury of a single witness; therefore, it did not rise to the level of fraud upon the court.

¶9. The chancellor further found that Lisa could not have discovered George's fraud until after the expiration of the six-month time limit under Rule 60(b)(1). Addressing the Rule 60(b)(1) time limit, the chancellor stated:

7

> [George] argues that this court is precluded from any action based upon the Court of Appeals ruling in ***Brown v. Estate of Johnson***, 822 So. 2d 1072 (Miss. App. 2002). This court has reviewed ***Brown*** repeatedly and is aware of the finding that "mere perjury is not ground for collateral attack on a judgment of divorce." ***Brown v. Estate of Johnson***, 822 So. 2d 1072, 1073 (Miss. App. 2002) (citing ***Kirby v. Kent***, 160 So. 569, 572 (Miss. 1935)). However, this court finds that equity demands that [George] not be rewarded for his deceitful behavior.

¶10. The chancellor cited ***Kalman v. Kalman***, in which the Court of Appeals had allowed the consideration of a motion to modify a final judgment of divorce more than three years after entry of judgment based upon the husband's nondisclosure of lottery winnings. ***Kalman v. Kalman***, 905 So. 2d 760, 763-64 (Miss. Ct. App. 2004). The Court of Appeals in ***Kalman*** stated that the husband's argument pertaining to his failure to disclose accurate financial information was an attempt to justify a fraud on the court. ***Id.*** at 764. Citing the court's equitable powers, the chancellor here deemed Lisa's "Petition to Set Aside a Final Judgment of Divorce and/or Property Settlement" to be a "Motion to Modify the Final Judgment of Divorce and/or Property Settlement." Essentially, the chancellor determined that, when presented with egregious circumstances similar to those in ***Kalman***, the chancery court has the equitable power to entertain a motion to modify a final judgment of divorce filed outside the six-month time limit in Rule 60(b)(1).

### B. *The Court of Appeals' opinions*

¶11. Before the Court of Appeals, George argued that the chancellor's finding of fraud was an abuse of discretion, and that Lisa's petition was untimely under Rule 60(b)(1). The Court of Appeals conducted a lengthy analysis of the evidence of fraud that was before the chancellor and determined that "the facts place genuine doubt upon a legitimate fraud

8

claim[.]" ***Trim***, 2009 WL 1058630, at *5. In particular, the Court of Appeals expressed doubt that George intentionally had misrepresented the value of the stock. However, the Court of Appeals found it unnecessary to decide whether the chancellor's finding of fraud was an abuse of discretion, because it found the determinative issue to be whether Lisa's petition was untimely filed under Rule 60(b)(1). The Court of Appeals found that the chancellor erroneously had relied upon Rule 60(b)(6) in deciding the case. The Court of Appeals stated:

> The chancellor's ruling relating to Lisa's fraud claim does not preempt Rule 60(b)(1). Rule 60(b)(1) clearly requires that any claim of fraud upon a party to litigation must be brought within six months after the judgment, and such a claim does not fall within the "catch-all" Rule 60(b)(6). As stated in ***Tirouda***, "this Court is without authority where Rule 60(b)(1), (2), or (3) is the basis for an action and the motion is brought beyond the six-month limitation." ***Tirouda***, 919 So. 2d at 214(¶8).

***Trim***, 2009 WL 1058630, at *7.

¶12. The Court of Appeals distinguished its prior decision in ***Kalman***, in which it had allowed consideration of a motion to modify made three years after entry of the final divorce judgment, finding that "the instant matter does not deal with something as bizarre as a litigant winning the lottery one month prior to divorce and hiding his winnings from the spouse and the court." ***Trim***, 2009 WL 1058630, at *6. The Court of Appeals cited Lisa's testimony that she was involved in George's business, from which it concluded that Lisa easily could have discovered the true stock value prior to the divorce judgment. The Court of Appeals also stated that a property settlement agreement incorporated into a divorce decree is not subject to modification.

9

¶13. The Court of Appeals concluded that, although the result was a harsh one, Lisa's petition was time-barred under Rule 60(b)(1). Accordingly, the Court of Appeals reversed and rendered a judgment for George. In dissent, four judges argued that sufficient evidence supported the chancellor's finding of fraud, and that the chancellor possessed discretion to entertain Lisa's petition pursuant to the "grand reservoir of equitable power to do justice in a particular case" afforded by Rule 60(b)(6). *Trim*, 2009 WL 1058630, at *8-10 (Myers, P.J., dissenting). The dissent argued that, because Lisa could not have discovered the value of the stock within the six-month time limitation, this was an extraordinary situation in which equitable principles justified the application of Rule 60(b)(6) rather than Rule 60(b)(1). Further, the dissent argued that, although Lisa did not file the petition until approximately two years after her discovery of the misrepresentation, the evidence of dilatory conduct by Lisa's attorneys would have permitted a finding that she had brought the petition within a reasonable time.

### C. Discussion

¶14. The Court of Appeals' analysis of the chancellor's ability to modify the final judgment of divorce was limited to determining the court's authority under Rule 60(b). Both the majority and the dissenting opinions found that the chancellor had used Rule 60(b)(6) to modify the judgment; the majority and the dissent disagreed about whether the chancellor's use of Rule 60(b)(6) was permissible. This Court's review of the chancellor's opinion reveals that the chancellor did not invoke Rule 60(b)(6) as authority for the modification. Instead, the chancellor opted to use his equitable powers to treat Lisa's petition as a motion

10

to modify the final judgment, and he modified the equitable distribution of marital property accordingly.

¶15.    Rule 60(b) provides that the rule does not limit the court's power to "to set aside a judgment for fraud upon the court."  Miss. R. Civ. P. 60(b).  "Relief based on 'fraud upon the court' is reserved for only the most egregious misconduct, and requires a showing of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" ***Wilson v. Johns-Manville Sales Corp.***, 873 F.2d 869, 872 (5th Cir. 1989) (quoting ***Rozier v. Ford Motor Co.***, 573 F.2d 1332, 1338 (5th Cir.1978)).  Fraud on the court "should 'embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" ***Id.*** (quoting ***Kerwit Med. Prods., Inc. v. N & H Instruments, Inc.***, 616 F.2d 833, 836 n.8 (5th Cir. 1980)).  "Fraud vitiates a judgment caused by the active agency of some party to the proceeding, as the court is misled and deceived as to the facts upon which it attempts to administer the law, and mistake is equally efficacious in procuring a wrong . . . . ***Brown v. Wesson***, 114 Miss. 216, 74 So. 831, 834 (1917).

¶16.    It has been recognized that "[t]he mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)." ***Kerwit Med. Prods.***, 616 F. 2d at 837.  We find that the intentional filing of a substantially false Rule 8.05 statement is misconduct that rises above mere nondisclosure of material facts to an adverse party.  A Rule 8.05 statement is a mandatory filing with the chancery court that provides that court with

11

accurate financial information to assist in its equitable distribution of the divorcing parties' assets. Miss. Unif. Ch. R. 8.05. In many divorce cases, a chancellor undertaking equitable distribution has the power to control virtually every asset the parties possess. It is vital to the effective administration of justice in the domestic relations arena that chancellors undertake this task while in possession of accurate financial information. To that effect, our rules provide that the failure to submit a Rule 8.05 statement without just cause constitutes contempt of court. Miss. Unif. Ch. R. 8.05.

¶17. We hold that a party's intentional filing of a substantially false Rule 8.05 financial statement constitutes a fraud on the court. In this case, the chancellor found that clear and convincing evidence demonstrated that George intentionally had filed a false Rule 8.05 financial disclosure statement that drastically undervalued a major marital asset. However, the chancellor determined that George's conduct constituted fraud on a party and did not rise to the requisite level of egregiousness for fraud on the court. This finding was manifestly erroneous. We hold that, by intentionally filing a substantially false Rule 8.05 financial disclosure statement, George committed a fraud upon the court. Therefore, no time limit constrained the chancellor's ability to modify the divorce judgment to remedy the fraud on the court. Miss. R. Civ. P. 60(b).

¶18. The Court of Appeals cited *Townsend v. Townsend*, 859 So. 2d 370, 376 (Miss. 2003), for the proposition that a property settlement agreement is not subject to modification. However, *Townsend* clarifies that a property settlement agreement is like any other contract, and may be reformed on the basis of mutual mistake, or a mistake by one party coupled with fraud or inequitable conduct by the other party. *Townsend*, 859 So. 2d at 376 (quoting

12

*Johnson v. Consol. Am. Life Ins. Co.*, 244 So. 2d 400, 402 (Miss. 1971); *see Norton v. Norton*, 742 So. 2d 126, 129 (Miss. 1999) (stating that "absent fraud or a contractual provision stating otherwise, neither a property settlement nor lump sum alimony may be modified").

¶19. We further observe that, although the Court of Appeals expressed doubt that the elements of fraud had been met, that court improperly reweighed the evidence before the chancellor to reach this conclusion. The elements of an intentional or fraudulent representation, which must be proven by clear and convincing evidence, are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 406 (Miss. 2007). The Court of Appeals observed that the chancellor had "seemed to place great emphasis" on the fact that George had represented in a financial statement to State Bank and Trust in December 1999 that the value of his stock in BCI was $1,100,000, but represented in his 8.05 statement in April 2000 that it was worth only $100,000. The chancellor also had relied on the fact that George had represented in a financial statement to State Bank and Trust in December 2000 that his stock was worth $1,186,000. Based upon George's testimony that: (1) the financial statements were not completed by him, but only signed by him; (2) he was relatively uneducated and had quit school at the age of sixteen; (3) he did not believe the stock was worth $1,100,000 when he discussed the divorce settlement with Lisa in September 1999 and submitted the Rule 8.05 statement in April 2000; and (4) his own expert in the *Trim v. Bailey*

litigation had valued the stock at $111,000, the Court of Appeals found the evidence unconvincing that George intentionally had perpetrated fraud upon Lisa. Moreover, the Court of Appeals found that Lisa's reliance on George's valuation was naive due to her testimony that she had performed work for BCI on several occasions. The Court of Appeals stated: "On one hand, she claimed to work at and be very involved with the company; while on the other hand, she claimed to barely know George's partner or any details surrounding the closely-held company. It is unclear where the truth lies." *Trim*, 2009 WL 1058630, at *4. The Court of Appeals also stated that, if Lisa had harbored doubts about the stock valuation at the time of the divorce, she could have refused to execute the property settlement agreement, requested George's agreement to an appraisal of the stock, or demanded BCI's financial records. *Id.*

¶20. "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *Chamblee v. Chamblee*, 637 So. 2d 850, 860 (Miss. 1994) (quoting *Polk v Polk*, 559 So. 2d 1048, 1049 (Miss. 1990)). We observe that the evidence which the Court of Appeals found to cast doubt upon the chancellor's finding conflicted with other evidence that was before the chancellor. Certainly, reasonable minds could differ on whether the elements of fraud were met in this case. Nonetheless, because the evidence was capable of more than one reasonable interpretation, the issue was for the chancellor as the finder of fact. It was within the chancellor's discretion to weigh the credibility of the conflicting testimony and to choose between competing interpretations of

14

the evidence.  The evidence before the chancellor was sufficient to support his discretionary findings that George had perpetuated fraud upon Lisa and that this act was egregious.

## CONCLUSION

¶21.  We find that George's submission of a substantially false Rule 8.05 financial disclosure statement constituted a fraud on the court, and no time limit was applicable to the court's ability to remedy the fraud by modifying the final judgment of divorce.  Therefore, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the Chancery Court of Hinds County.

¶22.  **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR.**