BARNES, J.,
dissenting:
¶ 34. Although Charles claims his testimony should have alerted the chancellor as to the correct figure for his salary, the fact remains that he submitted a substantially false Uniform Chancery Court Rule 8.05 financial statement to the court. Moreover, if Charles had no intent to file a false statement, then his contradictory testimony regarding his financial statement, pay stub, and his income should have alerted him that an amendment or correction to the Rule 8.05 statement was required. Consequently, I find no error in the chancellor’s ruling that Charles committed a fraud upon the court, and I dissent from the majority’s finding that the chancellor erred by vacating the prior decree and increasing the alimony award to Julianne.
¶ 35. Immediately prior to a recess at the initial divorce hearing on January 23, 2009, Charles commented that his salary was “$88,000 a year.” Yet, after the proceedings resumed, Charles reviewed his 8.05 statement and testified: “I have here gross monthly income $4,651.71.” (Emphasis added). This figure only equates to an annual gross salary of $55,820.52. Then, Charles confirmed that the check stub admitted into evidence was an “accurate reflection of [his] current wages.” Charles identified it as “a copy of my paycheck for the month of November.” (Emphasis added). The stub, however, noted that the ending pay date was November 22, 2008.
Q. And that’s an accurate reflection of your income?
A. That’s correct.
However, Charles later clarified that he was paid in two-week pay periods.
¶ 36. The chancellor relied on Charles’s representation of his salary from his Rule 8.05 statement and his pay stubs in determining the award of alimony. In the judg *1269 ment entered on July 6, 2010, the chancellor stated:
In the divorce action, the Court considered [Charles’s] net income pursuant to his check stub ... as $2,158.59 per pay period.
The following calculations were made:
$2,153.59
[[Image here]]
$55,883.34
[[Image here]]
$4,666.11
The Court relied on the $1-,666.11 per month calculation as [Charles’s] income in calculating the award of alimony to [Julianne] in the divorce action.
The Court finds that [Julianne] presented sufficient evidence to prove fraud by [Charles].
(Emphasis added).
¶ 37. At a hearing on January 13, 2010, Charles was asked about the discrepancy between his 2008 tax return and his Rule 8.05 statement.
Q. I’m going to hand you this. Can you recognize that as your '08 8.05 presented for the divorce proceeding?
A. That’s correct.
Q. Okay. And according to your 8.05 for the divorce proceeding, your gross salary wages, et cetera was forty-six fifty-one seventy-one?
A. That’s correct.
Q. Okay. [Charles], if I even round that up to five thousand a month gross, that’s sixty thousand for the year '08. But your return says that you made approximately a hundred thousand. How do you explain the difference?
A. At the time I filled this out in November, I didn’t have the tax return.
[[Image here]]
And I again used the calculation provided there with the pay stub, current pay stub I had.
At a second hearing in February 2010, Charles refused to admit that the figure on the 8.05 was incorrect.
Q. [Charles], in your 8.05 that you submitted in connection with this divorce case, December of 2008, you indicated that your income per month was four thousand^] six hundred fifty-one dollars and seventy-one cents, didn’t you.
A. That’s what it was at the time.
Q. But your income tax return clearly shows you made over a hundred thousand dollars in '08? Is that not true?
A. That [8.05] that was filed that was filled out, I used the number — there was pay stubs submitted at the time of the divorce.
Q. [Charles], why don’t you admit that you misrepresented to this Court that you only made forty-five hundred or so a month. When you in fact, you know you made over ten thousand a month?
[[Image here]]
A. The number that I used to come up with this was off the pay stub when I submitted this 8.05[,] and I don’t have a copy of those pay stubs from November 2008.
He argued that he had been cross-examined regarding the year-to-date total, apparently referencing his comment about the $88,000 yearly salary.
¶ 38. In Trim v. Trim, 33 So.3d 471, 478 (¶ 17) (Miss.2010), the Mississippi Supreme Court held that “a party’s intentional filing of a substantially false Rule 8.05 financial statement constitutes a fraud on the court.” A part of Charles’s testimony contradicted the monthly salary amount in his Rule 8.05 statement, while some testi- *1270 raony supported the figure in the statement. It should have been evident to Charles, just as he claims it should have been evident to the chancellor, that the information in his 8.05 needed to be adjusted. As in Trim, “reasonable minds could differ on whether the elements of fraud were met in this case.” Id. at 479 (¶ 20). However, “[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts.” Id. (quoting Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)) (emphasis added). I find it reasonable for the chancellor to have relied on Charles’s Rule 8.05 statement, rather than try to weigh and determine which portion of his testimony was true or was not true. At no time during the original hearing did Charles indicate that the Rule 8.05 statement’s representation of “gross monthly income” was inaccurate. Therefore, I find that the evidence was sufficient for the chancellor to determine that Charles perpetuated a fraud on the court, and I would affirm the chancellor’s ruling.
GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.