# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01611-COA

LETA D. COLLINS                                                                              APPELLANT

v.

KENNETH J. COLLINS                                                                         APPELLEE

DATE OF JUDGMENT:                    08/26/2013
TRIAL JUDGE:                         HON. CYNTHIA L. BREWER
COURT FROM WHICH APPEALED:           MADISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:             DAVID NEIL MCCARTY
                                     OLIVER E. DIAZ JR.
ATTORNEYS FOR APPELLEE:              WILLIAM R. WRIGHT
                                     AMANDA JANE PROCTOR
                                     SARAH ANN ELLIS
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:             RULE 60(B) MOTION TO MODIFY FINAL
                                     JUDGMENT OF DIVORCE DISMISSED
DISPOSITION:                         AFFIRMED: 05/05/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     A year and four months after Leta and Kenneth Collins were divorced, Leta moved

to modify the final judgment of divorce based on Kenneth's alleged failure to disclose over

$500,000 in assets.  She also sought a modification based on the lack of Uniform Chancery

Court Rule 8.05 financial disclosures and their divorce attorney's dual representation during

the divorce proceedings.  The chancellor found Leta's claims unfounded and dismissed the

motion.  We affirm.

**FACTS**

¶2.     Leta and Kenneth were married in 1998. In January 2011, they filed a joint complaint for divorce based on irreconcilable differences. During the divorce proceedings, Kenneth and Leta were represented by attorney M. Chadwick Smith. The joint complaint states "[t]he parties together have been represented by M. Chadwick Smith," and the complaint was signed by Smith as "Attorney for Leta D. Collins and Kenneth J. Collins." An agreed "Child Custody and Property Settlement Agreement" (PSA) was prepared by Leta and initialed by both parties on each page. The PSA set out the division of marital property and provisions for child custody. Relevant to this appeal, it stated that Leta

> waives, relinquishes, gives up and transfers to [Kenneth] any and all interests she might have in and to any assets held by [Kenneth] in his name and/or for his exclusive benefit, and to any and all investments or accounts of any kind existing in their names jointly, including, but not necessarily limited to, business interests, inheritance or real property, savings accounts, checking accounts, certificates of deposits, pension/profit sharing accounts, investment accounts and any other retirement related or investment related accounts, as well as all spousal benefit and/or survivorship rights in and to said assets and accounts.

A similar provision stated that Kenneth "likewise" relinquished his rights to Leta's assets.

¶3.     The PSA went on to state that the parties had disclosed all material information to each other, and, if they had not, this would be a basis for modification of the final judgment of divorce.

> The [parties] represent that they have disclosed to each other all information regarding assets and liabilities owned by either party or jointly by the parties prior to the execution of this Agreement to the best of their knowledge and belief. Neither party has withheld any information whatsoever regarding the assets or liabilities of the parties. The parties agree that, should either party withhold material information regarding the existence of assets, liabilities or

other matters relating to the financial condition of the parties, such failure to disclose shall constitute a material change in circumstances regarding the assets and liabilities of the parties, and that information withheld shall be the subject of re-negotiation of this Agreement and/or the basis for a modification of final judgment of divorce.

¶4. The PSA was incorporated into the final judgment of divorce, which was granted on June 10, 2011. The chancellor found the PSA "contain[ed] adequate and sufficient provisions for the settlement of all property rights existing between the parties[.]" Although the parties initially waived the Rule 8.05 disclosures, these were later completed and reviewed by the chancellor, but were not made part of the record.

¶5. On November 1, 2012, a year and four months after the divorce was final, Leta filed a motion to modify the final judgment of divorce. Leta later filed an amended petition, which added motions for temporary relief and a temporary restraining order, asking for attorney's fees and seeking to enjoin Kenneth from dissipating assets.

¶6. Leta argued that after the divorce, "it became readily apparent that there was a gross discrepancy in the [parties'] lifestyles," with Leta having to rely on food stamps and incur debt to pay expenses, while Kenneth maintained a comfortable lifestyle. Leta hired an attorney to investigate the discrepancy. She found that Kenneth had a total of $536,526 between an investment fund and a retirement fund. Leta argued she was unaware of these assets because the couple's attorney, Smith, failed to disclose them to her. Leta also asserted that Kenneth had prevented access to the couple's financial information during the marriage, leaving her with no idea how much money Kenneth had or what was subject to equitable

3

distribution in the divorce. Kenneth admitted that he had controlled the finances during the marriage and that a friend of his handled the family's investments. Leta had a credit card, which Kenneth had paid off each month. Because of this, Leta argued the PSA should be modified as a matter of equity. Alternatively, she argued that the PSA was void because there was no evidence that the parties had completed the required Rule 8.05 disclosures or that Leta had waived her right to receive the disclosure.

¶7. The chancery court held a hearing on Leta's motion. After she put on her case-in-chief, Kenneth moved to dismiss Leta's claims under Mississippi Rule of Civil Procedure 41(b). The chancellor granted the motion, finding Leta had failed to prove her case. We conclude that, given the high burden on Leta and the deference owed to the chancellor's factual findings, this judgment cannot be disturbed on appeal.

## DISCUSSION

¶8. Leta's motion to modify the divorce decree falls under Mississippi Rule of Civil Procedure 60(b). Rule 60(b) allows for the modification of a final judgment if the relief sought is based on one of six enumerated reasons:

> (1) fraud, misrepresentation, or other misconduct of an adverse party;
>
> (2) accident or mistake;
>
> (3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged, or a prior

4

judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

(6) any other reason justifying relief from the judgment.

¶9. A six-month time-bar applies to reasons (1)-(3), while motions brought under (4)-6) must be filed within "within a reasonable time." *Id.* Rule 60(b)(6) "is a catch all provision to allow relief when equity demands." *Townsend v. Townsend*, 859 So. 2d 370, 375 (¶16) (Miss. 2003) (citation omitted). Motions brought under Rule 60(b)(6) cannot be based on one of the first five enumerated reasons. *Trim v. Trim*, 33 So. 3d 471, 475 (¶7) (Miss. 2010). Rather, Rule 60(b)(6) motions are meant for "exceptional and compelling circumstances, such as for fraud upon the court." *Id*. "Relief based on 'fraud on the court' is reserved for only the most egregious misconduct, and requires a showing of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *Id.* at 477 (¶15) (quoting *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989)). Fraud on the court carries "no limitation of time restricting the court from affording a remedy." *Id.* at 473 (¶3).

¶10. "The decision to modify a prior order under Rule 60(b) is a matter within the trial court's sound discretion." *Id.* at 475 (¶7).

¶11. The chancellor dismissed the case after finding that Leta "failed to put on her case in chief" as to the allegations in her amended complaint. An involuntary dismissal under Mississippi Rule of Civil Procedure 41(b) is proper, in a bench trial, when "the plaintiff has shown no right to relief." "In considering a motion to dismiss, the judge should consider the

5

evidence fairly, as distinguished from in the light most favorable to the plaintiff, and the judge should dismiss the case if it would find for the defendant." *Stewart v. Merchs. Nat'l Bank*, 700 So. 2d 255, 259 (Miss. 1997) (citation and internal quotation marks omitted). A trial court's grant or denial of a Rule 41(b) motion for involuntary dismissal is reviewed for substantial evidence/manifest error. *Crowell v. Butts*, 153 So. 3d 684, 687 (¶6) (Miss. 2014).

¶12. Leta asserts that the following issues warrant reversal of the chancellor's decision: (1) the terms of the PSA provided for modification if inequity resulted from either party's failure to disclose relevant information; (2) the PSA is void due to the absence of Rule 8.05 financial statements or a waiver; and (3) the couple's attorney engaged in prohibited dual representation.

### 1. Terms of the PSA

¶13. Leta contends that the PSA was a valid, enforceable contract that expressly allows modification of the divorce decree if either party failed to disclose "material information regarding the existence of assets." Leta alleges that Kenneth failed to disclose over $500,000 in assets and thus that she is entitled to relief under this provision of the PSA.

¶14. Leta is correct that the PSA is a valid contract and should generally be enforced as such. *Trim*, 33 So. 3d at 478 (¶18). But while Leta cites to the PSA provision prohibiting the "withhold[ing of] material information," she does not really allege that Kenneth withheld information. The closest she comes is her claim that she was not "allowed" access to financial documents during the marriage. Leta's real argument is that she just did not know

6

about Kenneth's investments. She testified that she had no knowledge of the couple's finances or what was subject to equitable distribution in the divorce because Kenneth handled all the finances during the marriage, and she was not provided with a Rule 8.05 statement. She also argues her lack of knowledge was compounded by the fact that she and Kenneth were represented by the same divorce attorney, and the attorney failed to inform her of the additional assets.

¶15. Leta's lack of knowledge does not equate to a finding that information was withheld from her or that fraud was committed on the court. Leta admitted that prior to the divorce, the couple "filled [a financial statement] out together." Kenneth's Rule 8.05 statement clearly lists a 401(k) valued at $420,000 and investments valued at $116,526 (of which approximately $64,000 comprised college savings accounts for the couple's children). Leta admitted she did not look at Kenneth's Rule 8.05 statement, despite knowing that he had completed one. And while she testified she "wasn't allowed" access to the couple's financial documents, there seems to be no question that the information was available to her. Leta went on to testify that the documents were in binders in the couple's shared closet in their home. She admitted she could have looked at the binders at any time – but never did. Leta and Kenneth also filed a joint tax return each year during the marriage. On occasion, their tax return was prepared by Leta's sister. Leta admitted she signed, but never read, the returns.

¶16. As to Leta's claim under Rule 60(b)(6), relief under that rule is reserved for

"exceptional and compelling circumstances, such as fraud upon the court." *Trim*, 33 So. 3d at 475 (¶7). Thus, we must examine whether Leta has raised any exceptional circumstances warranting relief.

¶17. In *Craft v. Craft*, 478 So. 2d 258, 262 (Miss. 1985), the wife moved to modify the couple's divorce decree over three years after the divorce, arguing her husband had "withheld from her information about his financial condition, deprived her of independent advice, and perpetrated a fraud upon her so as to invalidate the original agreement." The Mississippi Supreme Court found that the wife's lack of knowledge of her husband's financial situation did not render the PSA void, when the information was available to her, but she chose not to review it. *Id.* at 263.

¶18. Like in *Craft*, no evidence was presented that Kenneth withheld information regarding his assets. Rather, Leta failed to review the information that was available to her. We cannot find the chancellor erred in finding Leta showed no exceptional circumstance warranting relief under Rule 60(b)(6). Instead, we find that Leta's allegations fall squarely under Rule 60(b)(1) and (3) – "fraud, misrepresentation, or other misconduct" and "newly discovered evidence." These claims carry a six-month time limitation. Leta's motion for modification was filed a year and four months after the final judgment of divorce. Her claims are time-barred, as well as without merit.

## 2. Rule 8.05 Financial Disclosures

¶19. Leta alternatively argues that the PSA is void because no Rule 8.05 statements, or

8

waiver thereof, were made part of the record. She argues this Court should remand the case for equitable distribution of the property for this reason.

¶20. Uniform Chancery Court Rule 8.05 states:

Unless excused by Order of the Court for good cause shown, each party in every domestic case involving economic issues and/or property division shall provide the opposite party or counsel, if known, the following disclosures:

(a) A detailed written statement of actual income and expenses and assets and liabilities, such statement to be on the forms attached hereto as Exhibit "A," copies of the preceding year's Federal and State Income Tax returns, in full form as filed, or copies of W-2s if the return has not yet been filed; and, a general statement of the providing party describing employment history and earnings from the inception of the marriage or from the date of divorce, whichever is applicable . . . .

. . . .

When offered in a trial or a conference, the party offering the disclosure statement shall provide a copy of the disclosure statement to the Court, the witness[,] and opposing counsel.

. . . .

The failure to observe this rule, without just cause, shall constitute contempt of Court for which the Court shall impose appropriate sanctions and penalties.

¶21. Again, to prevail on her Rule 60(b)(6) motion, Leta must show exceptional circumstances warranting relief. An exceptional circumstance was found in *Trim* for the husband's violation of Rule 8.05. *Trim*, 33 So. 3d at 478 (¶17). In *Trim*, like here, the wife moved to modify the divorce decree under Rule 60(b)(6) based on her husband's misrepresentation of assets. *Id.* at 472 (¶1). The wife and husband had filed Rule 8.05

9

statements, but the husband "drastically undervalued a major marital asset." *Id.* at 478 (¶17). The sole issue on appeal was "whether the chancellor had authority to modify a final judgment of divorce upon a finding that one party fraudulently had misrepresented the value of an asset in the party's . . . Rule 8.05 financial disclosure statement." *Id.* at 474 (¶6). The supreme court found that the husband's "intentional filing of a substantially false Rule 8.05 financial disclosure statement" was fraud on the court. *Id.* at 473 (¶3). Because fraud on the court is an exceptional circumstance warranting relief under Rule 60(b), it was within the chancellor's authority to modify the final judgment of divorce. *Id.* at 478 (¶17).

¶22. Unlike the wife in *Trim*, Leta does not argue that Kenneth committed fraud on the court by falsifying his 8.05 statement. Kenneth's statement clearly lists the $536,526 in assets Leta says she was unaware of. Leta also does not argue Kenneth's failure to file his Rule 8.05 statement constituted fraud on the court. This assertion would lead to a finding that Leta also committed fraud, as her disclosure went unfiled as well. It is undisputed that although neither party filed a Rule 8.05 disclosure with the chancery court, both parties completed the required disclosures and submitted them to their attorney, which is what Rule 8.05 requires. Further, at the modification hearing, the chancellor recalled the following regarding the couple's disclosure statements: "[T]he [c]ourt required the parties to come back and give 8.05's because I would not waive 8.05's when I had a baby involved between these parties. The [c]ourt required Mr. Chad Smith to seek the 8.05's from the parties. I recall it very specifically."

10

¶23. Leta has not alleged fraud on the court; rather she argues that the failure to file Rule 8.05 statements alone is sufficient cause for remand. There is no basis in law for her claim. The parties drafted and entered into a PSA, which was incorporated as part of the final judgment of divorce, and the statements were completed. "An agreement made between the parties should ordinarily be enforced, and the court should take a dim view of efforts to modify or reform the parties' settlement agreement." *McFarland v. McFarland*, 105 So. 3d 1111, 1119 (¶23) (Miss. 2013). This issue is without merit.

### 3. Dual Representation

¶24. Leta argues that the marital property was not equitably distributed because she and Kenneth were represented by the same attorney during the divorce. She alleges that her lack of independent advice and counsel led her to sign the unfair PSA.

¶25. The joint complaint for divorce states "[t]he parties together have been represented by M. Chadwick Smith," and it was signed by Smith as "attorney for" both parties. Leta testified she and Kenneth believed they were represented by the same attorney. Leta argues this was a direct violation of Mississippi Rule of Professional Conduct 1.7(a), which prohibits representation of "a client if the representation of that client will be directly adverse to another client," unless certain conditions are met.

¶26. The chancellor addressed this issue in her findings from the bench, stating that

> when Mr. Chadwick Smith came in with his document, the final decree, I inquired of him who he represented because the divorce had the words that Ms. Collins'[s] counsel very ably draws to attention, that he represented both. And he stated, "I only prepared the paperwork, Judge. That's what it says on

11

there, 'Prepared by.'" Only after the assurances of Mr. Chad Smith did I accept the parties' divorce, and I signed the same on the 8th day of June 2011. Thus the allegations that Ms. Collins seeks to present that Mr. Collins committed a fraud on this court are fundamentally vested against Mr. Chad Smith.

¶27. Leta testified that she was the one who had actually prepared the PSA, based on her prior divorce papers, with some contributions from Kenneth. Kenneth likewise testified that Smith did not make any decisions for them. As the chancellor found, if Smith violated the Rules of Professional Conduct by engaging in dual representation, it was not a sufficient basis to modify the divorce decree. This issue is without merit.

¶28. **THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

12