# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00676-COA

**MARK TRAVIS O'STEEN**                          **APPELLANT**

**v.**

**ESTHER EILEEN O'STEEN**                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2017 |
| TRIAL JUDGE: | HON. MICHAEL CHADWICK SMITH |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RENEE M. PORTER |
| ATTORNEY FOR APPELLEE: | CAROL ANN ESTES BUSTIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/06/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On June 13, 2017, the Lamar County Chancery Court granted Mark O'Steen and Esther O'Steen a divorce on the ground of irreconcilable differences and pursuant to the parties' mutually executed property settlement agreement (PSA). Thereafter, Mark filed a motion to set aside the judgment pursuant to Mississippi Rule of Civil Procedure 60(b)(6). Specifically, he argued that the PSA should be set aside because neither party submitted a Rule 8.05 financial statement,[1] and he had no knowledge of Esther's retirement assets. The chancery court denied Mark's motion.

¶2. On appeal, Mark contends that the chancery court (1) erred in denying his Rule

---

[1] UCCR 8.05.

60(b)(6) motion and (2) erred by failing to perform a *Hemsley*[2] analysis or consider the *Ferguson*[3] factors as part of its equitable distribution when it approved the PSA the parties had agreed to and signed. Finding no error, we affirm the chancery court's judgment.

**FACTS**

¶3. On November 16, 2016, Esther filed her complaint for divorce and temporary relief on the grounds of habitual cruel and inhuman treatment, habitual use of drugs, and constructive desertion. Mark was served the complaint on December 28, 2016, but failed to make an appearance before the court or file an answer. The court set the trial for February 6, 2017.

¶4. On the date of trial, Mark requested a continuance so he could obtain counsel. The chancery court granted the continuance and scheduled a hearing on the temporary relief matters for February 9, 2017. At that hearing, Mark appeared pro se. Following the temporary relief hearing, the court issued a temporary order awarding Mark temporary possession of the marital residence and temporary use of all rental income that was to be applied toward the outstanding mortgage of the marital residence. The court then scheduled the trial for March 21, 2017.

¶5. Mark was still a pro se litigant on the day of trial and consented to the entry of divorce on the grounds of irreconcilable differences. Both parties subsequently filed a joint consent to divorce, and Esther filed a "Motion to Dismiss Fault Grounds and Withdrawing

---

[2] *Hemsley v. Hemsley*, 639 So. 2d 909, 913 (Miss. 1994).

[3] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

2

Pleadings." The chancery court granted Esther's motion and reserved the following issues for trial at a later date: property settlement, alimony, and equitable distribution. After a series of continuances, the court finally set the final trial for June 12, 2017.

¶6. On June 12, 2017, Mark had an attorney. On that date, the parties entered into a PSA. The agreement between Mark and Esther covered property (both real and personal), marital debts, separate domiciles, alimony, and retirement. Notably, Mark and Esther agreed that each was entitled to their own retirement accounts and waived any and all claims to the other's retirement accounts. They both signed the agreement along with their respective attorneys. Neither party submitted a Rule 8.05 financial statement at any point during the proceedings.

¶7. On June 13, 2017, the chancery court entered a final judgment of divorce, which incorporated the PSA. Almost six months later, Mark hired a new attorney. On December 12, 2017, the new attorney filed a motion to set aside the final judgment of divorce and the PSA pursuant to Rule 60(b)(6), stating that Rule 8.05 financial statements were neither filed by either party nor considered when creating the PSA or when the final judgment was issued. Specifically, he alleged that "the judgment of divorce and the [PSA] therein incorporated are erroneous insofar as to certain retirement benefits of the parties were not considered in the [PSA], thus rendering the said Judgment and Agreement inequitable." On March 27, 2019, the chancery court denied Mark's motion, finding that Esther's failure to file a Rule 8.05 financial statement did not constitute fraud on the court and that the PSA clearly addressed their retirement accounts.

3

¶8.    Mark appealed.

## ANALYSIS

### 1.    Rule 60(b)(6) Motion

¶9.    Mark argues that the chancery court erred in denying his Rule 60(b)(6) motion. He reasons that Esther's failure to file a Rule 8.05 financial statement "demonstrates a fraudulent effort on behalf of [Esther]" because she was able to conceal her Public Employees' Retirement System (PERS) account during the course of the proceedings.[4]  Mark further argues that Esther's conduct resulted in fraud on the court.

¶10.    We review a trial judge's decision to grant or deny relief under Rule 60(b) using an abuse of discretion standard. *M.A.S. v. Miss. Dept. of Human Servs.*, 842 So. 2d 527, 530 (¶12) (Miss. 2003) (citing *Tel. Man Inc. v. Hinds County*, 791 So. 2d 208, 210 (¶9) (Miss. 2001)).  "Rule 60(b)(6) provides a 'catch-all' provision under which relief may be granted in exceptional and compelling circumstances, such as for fraud upon the court." *Trim v. Trim*, 33 So. 3d 471, 475 (¶7) (Miss. 2010) (citing M.R.C.P. 60(b); *Tirouda v. State*, 919 So. 2d 211, 214 (¶8) (Miss. Ct. App. 2005)).  In order to obtain relief based on fraud upon the court under Rule 60(b)(6), it must be shown that some sort of egregious misconduct was present, and a showing must be made as to the existence of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id*. at 477 (¶15) (quoting *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989)).  "Fraud, misrepresentation or other misconduct must be proved by clear and convincing evidence."

---

[4] We glean from the briefs that Esther's PERS account is from her long career as a public school teacher. However, that fact is not contained in the record.

*Moore v. Jacobs*, 752 So. 2d 1013, 1017 (¶18) (Miss. 1999) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)).

¶11. Mark claims that Esther's failure to file a Rule 8.05 financial statement is analogous to the husband's conduct in *Trim v. Trim.* In *Trim*, both parties filed their own respective Rule 8.05 financial statements and entered into a PSA; however, it was later discovered that the husband had fraudulently misrepresented the value of his corporate stock on his Rule 8.05 financial statement. *Trim*, 33 So. 3d at 472 (¶1). The Mississippi Supreme Court ultimately held that "[the husband's] intentional filing of a substantially false Rule 8.05 financial statement constitute[d] a fraud on the court." *Id*. at 478 (¶17).

¶12. Mark's reliance on the *Trim* holding is misplaced. Mark does not argue that Esther committed fraud on the court by falsifying or intentionally misrepresenting assets on her Rule 8.05 financial statement. Mark instead argues that Esther's failure to file a Rule 8.05 financial statement (which allegedly allowed her to conceal her PERS retirement account) constitutes fraud. We disagree. The record is devoid of any proof that Esther intentionally misrepresented facts to the chancery court. As the supreme court stated in *Trim*, "the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)." *Trim*, 33 So. 3d at 477-78 (¶16) (Miss. 2010) (quoting *Kerwit Med. Prods. Inc. v. N & H Instruments Inc*., 616 F.2d 833, 837 (5th Cir. 1980)). Accordingly, Esther's alleged nondisclosure of her PERS retirement by not filing a Rule 8.05 financial statement would not warrant relief under Rule 60(b)(6).

¶13. We find this case more akin to *Collins v. Collins*, 188 So. 3d 581 (Miss. Ct. App. 2015). There, the parties filed a joint complaint for divorce based on irreconcilable differences and subsequently created a PSA. *Id*. at 583 (¶2). Nearly sixteen months after the final judgment of divorce was entered, the wife filed a motion to modify the judgment under Rule 60(b)(6). *Id*. at 584 (¶5). In part, she argued that the PSA was void because no Rule 8.05 financial statements or a waiver of the requirement to file those statements was entered as part of the record. *Id*. at (¶6). This Court ultimately found that the wife's claim was not an exceptional circumstance warranting relief pursuant to Rule 60(b)(6). *Id*. at 588 (¶23). Additionally, this Court addressed her argument in the context of Rule 60(b)(6) and the *Trim* holding:

> Unlike the wife in *Trim*, Leta does not argue that Kenneth committed fraud on the court by falsifying his 8.05 statement . . . Leta also does not argue Kenneth's failure to file his Rule 8.05 statement constituted fraud on the court. *This assertion would lead to a finding that Leta also committed fraud, as her disclosure went unfiled as well*[.]

*Id*. at 587 (¶22) (emphasis added).

¶14. As previously stated, Mark is not arguing that Esther committed fraud on the court by falsifying or intentionally misrepresenting assets on her Rule 8.05 financial statement. He merely argues that Esther's failure to file her Rule 8.05 financial statement is fraud in and of itself, which, as this Court stated in *Collins*, would mean that Mark committed fraud as well because Mark also failed to file a Rule 8.05 financial statement. *Collins*, 186 So. 3d at 587 (¶22). In other words, Mark cannot obtain relief under Rule 60(b)(6) for Esther's failure to file a Rule 8.05 financial statement when he, too, committed the same error.

6

¶15.   Both parties were represented by attorneys.  The parties agreed to the PSA and signed it, as did their attorneys.  In regard to any retirement accounts, the PSA contained the following language: "**The Wife shall be and is entitled to her retirement accounts. The Husband shall be and is entitled to his retirement accounts.  Husband and Wife hereby waive any and all claims to the other's retirement accounts.**"  (Emphasis added).  Mark cannot now claim surprise about Esther's retirement account when he specifically agreed that both parties were entitled to their respective retirement accounts and waived "all claims to the other's retirement accounts."  Accordingly, we find the chancery court did not abuse its discretion in denying Mark's Rule 60(b)(6) motion.

## 2.      Property Division

¶16.   Mark also argues that the chancery court erred in failing to perform a *Hemsley* or *Ferguson* analysis before dividing the marital property.  However, the chancery court did not divide the marital property because the parties had entered into a PSA.  This Court has stated that if the parties in a divorce proceeding agree to the division of their marital property by executing a PSA, then the chancellor is not required to undergo a *Ferguson* analysis.  *See Bougard v. Bougard*, 991 So. 2d 646, 649-50 (¶19) (Miss. Ct. App. 2008).  In *Bougard*, this Court reasoned "the division of the assets and the amount of alimony were set by an agreement of the parties.  The agreement was made between the parties on the day of the divorce hearing."  *Id*. at 649 (¶19).  Further, "[t]he agreement was read into the record, and both parties agreed to be bound by the terms as read into the record."  *Id*. at 649-650 (¶19).

¶17.   Likewise here, Mark and Esther executed a PSA the day that their trial was supposed

to take place. Further, the agreement between Mark and Esther contained two important provisions. First, section X of the PSA (titled "VOLUNTARY EXECUTION") stated that the "provisions of this agreement and their legal effects have been fully explained to the parties, and each party acknowledges that this agreement is fair and equitable, and that it is being entered into voluntarily[.]" Second, section XI (titled "CONSTRUCTION OF AGREEMENT") stated that the agreement contains the "full, final, and complete division of all property between the parties and contains all provisions with respect to property settlement . . . . **Accordingly, each accepts the same in full and final settlement and satisfaction of any and all claims and rights that each may now or hereafter have against the other."** (Emphasis added).

¶18. Because the PSA between Mark and Esther was entered into voluntarily on the date of their divorce hearing, the agreement was signed by both parties, and the agreement contained the full and complete division of property between Mark and Esther, there remained no other issue for the chancellor to consider. Mark and Esther's PSA was a contract between them. Mark has not **alleged coercion, overreach, or that he did not voluntarily enter into the agreement**. He was represented by an attorney the entire time the agreement was negotiated, reduced to writing, and signed. Accordingly, there was no need for the chancellor to perform a *Hemsley* analysis or a *Ferguson* analysis.

## CONCLUSION

¶19. We find the chancery court did not err in denying Mark's Rule 60(b)(6) motion. We further find that the chancery court was not required to undergo a *Hemsley* analysis or a

8

*Ferguson* analysis. Accordingly, we affirm the chancery court's judgment.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.**