25 So.3d 392 (2009)
In the Matter of The ESTATE OF Kimberly Denise PEARSON, Deceased.
Paula Davis, Administratrix Ad Litem, Appellant,
v.
Bobby Stokes, Appellee.
No. 2008-CA-00160-COA.
Court of Appeals of Mississippi.
June 30, 2009.
Rehearing Denied October 27, 2009.
Certiorari Denied January 7, 2010.
*393 Stephen P. Wilson, Joe Clay Hamilton, Meridian, attorneys for appellant.
Andy Davis, Amanda Trawick Rainey, Meridian, attorneys for appellee.
Before LEE, P.J., GRIFFIS and CARLTON, JJ.
GRIFFIS, J., for the Court.
¶ 1. Bobby Gene Stokes brought an action against Paula Davis and claimed that Davis committed fraud upon the chancery court and that as Kimberly Denise Pearson's biological father, he was entitled to a portion of the wrongful death proceeds from her estate. The chancellor found that Davis had committed fraud upon the court and awarded Stokes a portion of the proceeds from Pearson's estate. Aggrieved, Davis now appeals and argues that: (1) the chancellor erred as a matter of law by finding that she committed fraud upon the court, and (2) the chancellor's findings of fact were manifestly wrong and clearly erroneous. We find no reversible error and affirm.

FACTS
¶ 2. Pearson, a minor, died on February 24, 2003. Pearson's mother, Davis, filed a wrongful death suit and was appointed as the administratrix ad litem of Pearson's estate. Davis filed a complaint on April 13, 2006, to determine Pearson's heirs. In her complaint to determine heirs, Davis swore:
that the name of the father of Kimberly Denise Pearson is unknown to her, but on information and belief, avers that he is now deceased. That your Administratrix Ad Litem has fully supported the child since birth and no male has ever presented himself or claimed to be the father of Kimberly Denise Pearson and no other person has furnished any support of maintenance during the lifetime of the said Kimberly Denise Pearson.
Davis also ran a notice in the Wayne County News in the statutorily prescribed manner. On May 15, 2006, the chancellor approved the settlement and determined that Pearson had four statutory heirs: (1) Davis; (2) Pearson's brother, Kedric; (3) Pearson's sister, Coteasha; and (4) Pearson's sister, Needra. On May 9, 2007, Stokes filed his petition to reopen Pearson's estate and set aside the judgment approving the settlement pursuant to Mississippi Rules of Civil Procedure 60(b)(1) and 60(b)(6).
¶ 3. The chancellor held that a motion for error under Rule 60(b)(1) was not timely because: (1) it must be made within six months of the judgment, and almost one year had passed; and (2) Stokes was not an adverse party. However, the chancellor allowed Stokes to proceed with his claim that Davis committed a fraud upon the court under Rule 60(b)(6).
¶ 4. Stokes and Davis lived together for three years after Pearson was born in 1985. However, they ceased to live together after the birth of their daughter, Coteasha, because Stokes did not think that Pearson and Coteasha looked alike which led Stokes to believe that Pearson was not his daughter.
¶ 5. During the time Stokes and Davis lived together, Pearson lived mainly with Judge Tobie Bartee and his family. Judge Bartee testified that he met Davis at the doctor's office. He asked Davis who took care of her child, and she responded that she left Pearson with anyone she could *394 find. Soon after Judge Bartee and Davis met, Pearson began living with the Bartees.
¶ 6. When she was one year old, Pearson was diagnosed with rheumatoid arthritis. The record is not clear as to the cause, but at the same time, Pearson stopped walking and was crippled for life. The Bartees supported Pearson until she moved with her mother to Wayne County in 1996. Stokes often alleged that Judge Bartee was Pearson's father.
¶ 7. After Davis and Stokes separated in 1988, Davis filed for welfare benefits. Davis filed an affidavit and affirmation that Stokes was the father of Kedric, Pearson, and Coteahsa; and the State of Mississippi filed a complaint against Stokes to determine paternity and for child support. The Chancery Court of Clarke County ordered Stokes to pay Davis child support. Stokes signed the judgment that adjudicated him the father of all three children and ordered him to pay child support. Stokes paid approximately two-thirds of the child support that he was required to pay. According to Davis, Stokes believed he only owed her for two children  Kedric and Coteasha  so he only paid two-thirds of the support. Davis admitted that she constantly kept after Stokes that he needed to support and help all three children.
¶ 8. Davis claimed that she was under duress when she filed for welfare benefits and did not know what she was signing. She alleged that the agency must have put paternity information in after she signed the paperwork. Davis also denied knowing that the Mississippi Department of Human Services "took Stokes to Court or anything pertaining to those proceedings."
¶ 9. Davis swore during the wrongful death suit that Pearson's father's name was unknown to her. Davis explained that since Pearson was carried to full-term, she believed that Pearson's date of birth excluded Stokes as the father, as Davis was involved with another man at the time of Pearson's conception.
¶ 10. Stokes visited Pearson at the hospital shortly before she died, attended her funeral, and was listed as her father in the obituary. A DNA test confirmed that Stokes was in fact Pearson's natural father.

STANDARD OF REVIEW
¶ 11. "The decision to vacate a previous order under Rule 60(b) of the Mississippi Rules of Civil Procedure is a matter left to the sound discretion of the trial court, and the only question asked on appeal is whether there has been an abuse of that discretion." Tirouda v. State, 919 So.2d 211, 213(¶ 6) (Miss.Ct.App.2005) (citing Accredited Sur. and Cas. Co. v. Bolles, 535 So.2d 56, 58 (Miss.1988)).

ANALYSIS

1. Did the chancellor err as a matter of law by finding that Davis committed fraud upon the court?
¶ 12. Davis claims that she could not have committed fraud upon the court as a matter of law. Stokes responds that the chancellor was within his discretion when he found that Davis committed fraud upon the court.
¶ 13. At the outset, we recognize that Stokes was not a party to the original action; therefore, his claim was not properly brought under Rule 60(b). Mississippi Rule of Civil Procedure 60(b) states that:
the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;

*395 (2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
(Emphasis added).
¶ 14. Rule 60(b)(6) is a catch all provision that includes fraud upon the court. Stokes was not a party, and his claim for fraud upon the court should have been filed as an independent action as explained in Rule 60(b)(6). However, we will treat his claim as though it was brought as an independent claim.
¶ 15. "Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Tirouda, 919 So.2d at 216(¶ 11) (citing 7 Moore, FEDERAL PRACTICE P 60.33 at 515 (1971)).
¶ 16. Relief "based on `fraud upon the court' is reserved for only the most egregious misconduct, and requires a showing of `an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 872 (5th Cir.1989).
¶ 17. Davis argues that the failure of a party to be fully truthful cannot constitute fraud upon the court and cites Wilson in support of her argument. In Wilson, the Fifth Circuit Court of Appeals stated that "[t]he mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to `fraud upon the court' for purposes of vacating a judgment." Id. at 872. While a party's nondisclosure may not constitute fraud upon the court, "an administratrix is under an affirmative duty to disclose to [the court] the existence of known potential heirs and claimants." Smith v. Estate of King, 501 So.2d 1120, 1123 (Miss.1987). A party's nondisclosure of a fact and a party's failure to perform an affirmative duty are not one and the same. This Court can find no support for Davis's position that an administratrix's violation of her affirmative duty to inform the court of potential heirs and claimants cannot, as a matter of law, constitute fraud upon the court.
¶ 18. Davis correctly states that "courts have uniformly held that the perjury of a single witness is not sufficient to trigger relief for fraud upon the court." Tirouda, 919 So.2d at 216(¶ 12). Davis's adult son, Kedric, testified that Stokes planned to hire his own attorney to pursue a wrongful death suit after Davis's suit was over. This is evidence that Kedric knew Stokes believed that he was Pearson's father. However, Davis and Kedric both signed the petition to compromise and settle the wrongful death claim, which stated that the sole surviving heirs and wrongful death beneficiaries of Pearson were Davis, Kedric, Coteasha, and Needra.
¶ 19. Next, we address Stokes's claim as an action under Rule 60(b). Stokes was not made a party to the original action because of Davis's misrepresentations to the trial court. Because Stokes was not a party to the original action, he cannot seek relief under Rule 60(b) which specifically *396 states that "the court may relieve a party or his legal representative from a final judgment, order, or proceeding." (Emphasis added). But Rule 60(b) "does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court." M.R.C.P. 60(b)(6). Stokes should have brought his claim as an independent action.
¶ 20. "On appeal, we will affirm a decision of the circuit court where the right result is reached even though we may disagree with the reason for that result." Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993) (citing Stewart v. Walls, 534 So.2d 1033, 1035 (Miss.1988)). Stokes's claim could have been brought as an independent action, and the jurisdiction, court, and proof required would have been the same as the action under Rule 60(b)(6). Therefore, we will treat this matter as though it was brought as an independent action. Accordingly, we find that this matter was properly before the trial court and will now address the merit of Davis's assignment of error.

2. Were the chancellor's findings of fact manifestly wrong and clearly erroneous?
¶ 21. The chancellor found that Davis committed fraud upon the court by swearing that: (1) the father's name was unknown to her; (2) no one besides herself had ever supported Pearson; and (3) no one ever held himself out to be her father. Davis contends the chancellor's findings of fact are not supported by the evidence. Stokes responds that the evidence is indisputable that Davis knew Stokes was Pearson's father.
¶ 22. Judge Bartee testified that he believed Stokes was Pearson's father and that Pearson had traveled with the Bartees to Jackson, Mississippi on occasion for Pearson's medical treatment. When Davis filed for welfare benefits, she listed Stokes as the natural father of all of her children, including Pearson. In response, the State of Mississippi filed a complaint against Stokes, and the Chancery Court of Clarke County adjudicated Stokes to be the father of all three of Davis's children and ordered him to pay child support. Stokes paid child support under this order, and Davis testified that she "kept after" Stokes about his child support obligation to all three children.
¶ 23. In an attempt to show that Stokes knew about the wrongful death suit and had waived all his rights, Davis testified that she had discussed the lawsuit with him, and they had discussed whether her original attorneys would be able to collect any money. According to Davis, Stokes said he was going to get his own attorneys and sue when she was finished. However, the critical point is that Davis failed to explain why Stokes would file a wrongful death claim for Pearson unless he thought he was her father.
¶ 24. Furthermore, Stokes visited Pearson in the hospital shortly before she died, attended her funeral, and was listed as her father in the obituary. The chancellor was within his discretion when he found, based on these facts, Davis had committed fraud on the court; accordingly, we find that this argument is without merit.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF WAYNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. KING, C.J., AND IRVING, J., CONCUR IN RESULT ONLY.