# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00740-SCT

*CATHERINE DOE*

*v.*

*STAN SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/2015 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| TRIAL COURT ATTORNEYS: | C. COLLIER CARLTON |
| | AMANDA WHALEY SMITH |
| | MICHAEL LEE DULANEY |
| | H. R. GARNER |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL LEE DULANEY |
| ATTORNEY FOR APPELLEE: | PRO SE |
| NATURE OF THE CASE: | CIVIL - ADOPTION |
| DISPOSITION: | AFFIRMED - 09/22/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     When consent for a supposedly "uncontested" adoption is gained by intentionally concealing the identity of a known natural parent from the chancellor, a fraud is perpetrated upon the court.[1]  Such was the case here, where the natural mother schemed to give away her child without the natural father's consent.  She did so by falsely claiming—in her sworn

---

[1] *Cf.* ***Trim v. Trim***, 33 So. 3d 471, 477 (¶ 15) (Miss. 2010).

consent and joinder and testimony at the adoption proceedings—that she was unaware of her son's natural father. And her deception caused the court to grant an adoption to a third party based on false, material representations.[2]

¶2. The natural father discovered the mother's deception and filed a petition to set aside the adoption. Under Rule 60(b)(6) a chancellor is authorized to hear "independent actions" to set aside a "judgment based on fraud." M.R.C.P. 60(b)(6). And that is just what the chancellor did here.

¶3. After review, we find it was within the chancellor's discretion to set aside the adoption based on the mother's fraud. We affirm.

**Background Facts and Procedural History**

¶4. On April 24, 2013, Luke was born in Mississippi to unmarried parents—Katy and Stan.[3] Shortly after his birth, Katy and young Luke moved from Mississippi to Florida to live with Stan and his parents. But the relationship soon soured, and Katy and Luke moved back to Mississippi in September or October of 2013.[4] After moving back to Mississippi, Katy realized she was pregnant again. And according to Stan, around November 2013, Katy told him about her pregnancy. But Katy told Stan he was not the child's father. She instead

---

[2] There is no record evidence whatsoever that Charles, Catherine, or their counsel knew of Katy's misrepresentations to the court.

[3] This is a confidential case, requiring fictitious names for the parties and family members.

[4] There is conflicting evidence about the date Katy and Luke moved back to Mississippi. But the parties agree it was during fall 2013.

claimed a man named Mark had gotten her pregnant.[5] So, believing he had only one child with Katy, Stan filed suit in DeSoto County, on March 7, 2014, to establish paternity of that child—Luke. He also asked the chancellor to determine custody, visitation, and support for Luke.

¶5.    Less than a month later, Katy married Mark. And on May 24, 2014, Katy gave birth to a son, whom she named Matthew.[6] She planned to give Matthew up for adoption. And three days after his birth, Katy signed a consent and joinder to Matthew's adoption by Charles and Catherine, a married couple. In her consent to the adoption, Katy claimed she was unaware of the identity, name, or address of Matthew's biological father. That same day, May 27, 2014, Katy's husband Mark underwent paternity testing to determine if he was Matthew's father. These test results, received on June 10, 2014, showed a 0.00% probability that Mark was Matthew's father. Catherine and Charles went ahead and filed their petition to adopt Matthew in Marshall County on June 24, 2014.[7] And when the petition was brought

---

[5] Katy's testimony from the April 21, 2015, hearing is inconsistent. She contradicted herself numerous times about when she first told Stan of her pregnancy and that he was Matthew's father. After she testified, the chancellor found Katy had perjured herself. He requested the district attorney's office prosecute her for perjury.

[6] Matthew was born in Memphis, Tennessee. His Certificate of Live Birth lists Mark as his father.

[7] Catherine and Charles attached to their adoption petition Katy's affidavit and the paternity test results excluding Mark. The record contains no affidavits for notice by publication or notice by service of process for the adoption proceedings.

for hearing, Katy lied in court. Relying on her misrepresentations, the chancellor entered a final decree granting the adoption on July 25, 2014.[8]

¶6. In early August, 2014, Stan and his mother asked Katy about her new child Matthew. Katy told them Matthew was born in July. But when Stan and his mother asked to see the child, Katy declined. Instead of being truthful about the adoption, Katy claimed the child was with Mark's mother and was ill. Stan continued to press Katy about Matthew, eventually threatening to seek a paternity test. And on August 10, 2014, Katy came clean and admitted to Stan that Matthew was his son. She also told him Matthew had been adopted.

¶7. On October 8, 2014, Stan petitioned the court to reopen Matthew's adoption, determine paternity, and set aside the adoption decree. To secure appearance of the necessary parties, Stan issued both Rule 4(c)(1) and Rule 81(d)(1) summonses to the adoptive parents and to Katy and Mark. The adoptive parents filed an entry of appearance and objection. They claimed Stan lacked standing to petition the court. And they also argued reopening the adoption was not in Matthew's best interest. The record shows Katy and Mark did not respond at all.

¶8. The chancellor ordered a paternity test, which was performed on January 12, 2015. The test results showed a 99.998% probability that Stan is Matthew's father. After receiving

---

[8] The chancellor waived the six-month interlocutory period. *See* Miss. Code Ann. § 93-17-13 (Supp. 2015).

these test results, Stan and the adoptive parents entered an agreed order setting the matter for an April 21, 2015, trial.

¶9.     Before trial, the adoptive parents filed a motion to dismiss Stan's petition. They sought dismissal under Mississippi Rule of Civil Procedure 12(b) or, in the alternative, appointment of a guardian ad litem and temporary custody of Matthew.[9] Stan responded and argued, as Matthew's natural father, he had standing to ask the court to set aside the adoption.[10] He also insisted his parental rights were never terminated, nor had any such request been made. So as he saw it, temporary custody and appointment of a guardian ad litem was improper. At trial, the adoptive parents pursued their motion for dismissal. But rather than pressing Rule 12(b) grounds, they argued Stan failed to follow the proper procedures under Mississippi Code Sections 93-17-5 and 93-17-6.[11] The chancellor denied their motion.

---

[9] The adoptive parents sought dismissal under Rule 12(b)(1), (2), (4), & (6).

[10] Stan also argues (1) the motion to dismiss was improperly noticed for hearing, (2) the motion was not served on Katy and Mark, as named parties to Stan's petition, and (3) that no basis for dismissal existed under Rule 12(b).

[11] The adoptive parents argued these statutes required Stan to file a petition to determine his parental rights. And they also argues that he had to "demonstrate a full commitment to the responsibilities of parenthood" within thirty days of Matthew's birth to object to the adoption. They suggest because Stan did not did not meet these requirements under Mississippi Code Section 93-17-5(3), he could not object.

¶10.    After hearing testimony from Katy, Stan, Stan's mother, and Catherine, the chancellor found Katy knowingly had lied to his court—both in her affidavit and her testimony at the adoption proceedings.  And the record shows Katy admitted to these lies at trial:

| | |
|---|---|
| Stan's Attorney: | Okay. You signed that affidavit, and were you present when the child was adopted by [Charles and Catherine]? |
| Katy: | Yes, I was. |
| Stan's Attorney: | Ma'am? |
| Katy: | Yes, I was. |
| Stan's Attorney: | And did you testify? |
| Katy: | Did I raise my hand and testify? |
| Stan's Attorney: | Yes. |
| Katy: | I did. |
| Stan's Attorney: | Did you inform the Court that you did not know who the father was? |
| Katy: | Yes, I signed a paper that said I did not know. |
| The Court: | You testified to that effect? |
| Katy: | I did and I did know. |
| The Court: | Ma'am? |
| Katy: | I did sign that, and I did know who the father was. |

Faced with this evidence, the chancellor specifically found that Katy knew Stan was Matthew's father after Mark's paternity test. And she intentionally concealed this information from the parties and the court during adoption proceedings.

¶11. The chancellor also found there were no attempts to locate or determine Matthew's natural father during the adoption proceedings and no service, by publication or process. Catherine's attorney acknowledged this procedural defect, conceding that Stan was not properly noticed and should have been made a party to the adoption. The chancellor also mentioned Stan's diligence. He pointed out that when Stan learned of Matthew's paternity and adoption, he immediately contacted his attorney to set aside the adoption. Ultimately, the chancellor found Katy's intentional lies and concealment of Matthew's true father's identity amounted to a fraud upon the court. And he set aside the adoption for these reasons.

¶12. Catherine now appeals, arguing (1) the chancellor erred in setting the adoption decree aside, (2) Stan lacked standing to petition the chancellor to set aside the adoption, and (3) process for the April 21, 2015, trial was improper.

**Analysis**

*Standard of Review*[12]

---

[12] No appellee brief was filed in this appeal. The failure to file an appellee brief is ordinarily treated as a confession of error, except where a child's interests are concerned. *Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992) (citing *Price v. Price*, 430 So. 2d 848, 849 (Miss. 1983)). In those instances, this Court makes a special effort to review the record for support to affirm. *Id*. (citing *Sparkman v. Sparkman*, 441 So. 2d 161 (Miss. 1983), and *Garceau v. Roberts*, 363 So. 2d 249 (Miss. 1979)).

¶13. Our standard of review is limited. A chancellor's modification of a prior order under Rule 60(b) is reviewed for abuse of discretion. *Trim*, 33 So. 3d at 475 (¶ 7) (citing *Accredited Sur. & Cas. Co. v. Bolles*, 535 So. 2d 56, 58 (Miss. 1988)).

## I. Grounds to Set Aside the Adoption

¶14. A fraud upon the court is an intentional misdeed that "vitiates a judgment" because "the court is misled and deceived" about the facts it relies upon when administering the law. *Trim*, 33 So. 3d at 477 (¶ 15) (quoting *Brown v. Wesson*, 74 So. 831, 834 (Miss. 1917)). Rule 60(b)(6) gives judges broad authority to set aside judgments entered, resulting from such fraud. *Trim*, 33 So. 3d at 475 (¶ 7) (citing M.R.C.P. 60(b)(6) and *Tirouda v. State*, 919 So. 2d 211, 214 (Miss. Ct. App. 2005)). However, to qualify as "fraud upon the court," there must be exceptional and compelling circumstances and the deceptive act(s) must be material and extreme. Not just any falsity or misstep, even if intentional, is enough for relief.

¶15. "Relief based on 'fraud upon the court' is reserved for only the most egregious misconduct, and requires a showing of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"[13] *Wilson v. Johns-Manville Sales Corp.*, 873 F. 2d 869, 872 (5th Cir. 1989) (quoting *Rozier v. Ford Motor Co.*, 573 F. 2d 1332, 1338 (5th Cir. 1978)). Mere nondisclosure of pertinent facts to the court "does not add up to

---

[13] *See also* **In re Guardianship of McClinton**, 157 So. 3d 862, 870 (¶ 17) (Miss. 2015) (Rule 60(b)(6) is a "catch all" provision for exceptional and compelling circumstances) and **Roberts v. Lopez**, 148 So. 3d 393, 399 (¶ 12) (Miss. Ct. App. 2014) (the substantial misrepresentation of facts on which a judgment is based constitutes a fraud on the court).

8

'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)." *Trim*, 33 So. 3d at 477-78 (¶ 16) (quoting *Kerwit Med. Prods., Inc. v. N & H Instruments, Inc.*, 616 F. 2d 833, 836 n.8 (5th Cir. 1980)). Furthermore, the fraud must be proved by clear and convincing evidence. *Moore v. Jacobs*, 752 So. 2d 1013, 1017 (Miss. 1999) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 221 (Miss. 1984)).

¶16. Here, the chancellor found Katy's deceptive acts and omissions—which she admitted she knowingly made—met these high marks. Katy had filed a voluntary, sworn joinder and consent to Matthew's adoption.[14] And in it, she represented she was unaware of Matthew's biological father's name, identity, or address. But under oath at the April 21, 2015, hearing, Katy admitted to lying about Matthew's father's identity in her consent. She also admitted she lied when testifying at Matthew's adoption proceeding. She said she did so because she knew Stan would be a poor parent and caregiver.

¶17. We have held that the effective administration of justice requires our chancellors have accurate financial information to distribute marital assets during divorce. *See Trim*, 33 So. 3d at 477-78 (¶¶ 16, 17) (finding a party who filed a substantially false, statutorily required Rule 8.05 statement committed a fraud upon the court). So certainly, an intentional fraud

---

[14] Under Mississippi Code Section 93-17-5, Katy was required to either provide her consent to the adoption or appear and contest it. Miss. Code Ann. § 93-17-5(1), (4) (Rev. 2013).

aimed solely to circumvent a natural parent's statutorily mandated consent[15] to an adoption undermines the effective administration of justice.

¶18.   The chancellor found that Katy knew who Matthew's father was after the first paternity test excluded her husband. And she withheld this information from the court and all parties involved. He held that Katy knowingly had misled the court and all parties through her testimony, affidavit, and nondisclosures regarding Matthew's paternity.

¶19.   And because the heart of Katy's actions was designed to deceive the court, by lying about and omitting material facts to trick the court into granting a supposed uncontested adoption, the chancellor properly found that a fraud was committed upon his court.[16]

## II.   Rule 60(b)(6) Standing

¶20.   Catherine is correct that Stan was not a party to Matthew's adoption. Honing in on this fact, she argues that Rule 60(b)(1) relief from the adoption decree is unavailable to Stan because he was a nonparty. *See In re Adoption of A.S.E.L.*, 111 So. 3d 1243, 1249-51 (Miss. Ct. App. 2013). However, Catherine is viewing Katy's misdeeds as "fraud . . . of an adverse party"—the type of fraud discussed in that case. *Id*. But Katy's deceptions and omissions were not mere frauds of an adverse party. Rather, the judge found they had caused a "fraud upon the court." M.R.C.P. 60(b)(6). And Rule 60(b)(6) authorizes courts to hear

---

[15]*See* Miss. Code Ann. § 93-17-5(1), (4) (Rev. 2013).

[16] The requirement that fraud, misrepresentation, or other misconduct be proved by clear and convincing evidence is moot here, since Katy admitted her fraud. *See Moore v. Jacobs*, 752 So. 2d 1013, 1017 (¶ 18) (Miss. 1999).

"independent actions"—such as the one filed by Stan—to set aside a "judgment for fraud upon the court." M.R.C.P. 60(b)(6).

¶21. Rule 60(b)(6) does not require that an independent action be labeled as such. *Hester v. State*, 749 So. 2d 1221, 1223-24 (¶ 12) (Miss. Ct. App. 1999) (citing *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77, 81 n.7 (5th Cir. 1970)). And, as federal treatment of a similar rule shows, "when the 60(b) relief is sought by an independent action, there is no time limit save laches on when the action may be brought." *Id*. (quoting *In re Casco Chem. Co.*, 335 F.2d 645, 652 (5th Cir. 1964)).

¶22. The independent-action principle has been applied by the court of appeals to a nonparty's complaint to set aside a judgement.[17] *See In re Estate of Pearson*, 25 So. 3d 392, 395 (¶ 14) (Miss. Ct. App. 2009). In *Pearson*, an unwed, natural father petitioned the chancery court to set aside the final judgment closing his minor daughter's estate. The father did so because the natural mother fraudulently excluded him as an heir. *Id*. at 393 (¶ 3). The natural mother, in the petition to determine heirs, swore she was unaware of the natural father's name and averred the natural father was deceased. *Id*. at 393 (¶ 2). As in *Pearson*, Stan, a nonparty, filed an action raising the natural mother's falsities as a fraud upon the court. And while Stan did file his petition under the same cause number as Matthew's

---

[17] *Cf. Byrd v. Woods*, 90 So. 3d 666, 671-72 (¶ 24) (Miss. Ct. App. 2012) (noting that *Hester v. State* "approved" independent actions under Rule 60(b)(6) in Mississippi).

adoption, he named new parties to the proceedings and issued numerous summons to each named party.

¶23. But Catherine argues that Stan's only basis for standing is under Mississippi Code Section 93-17-5(3). And this would require the chancellor to make findings under Mississippi Code Section 93-17-6(4) to determine whether Stan was entitled to notice and to be made a party under Section 93-17-5. Catherine is correct that these statutes previously have been used by unwed, putative fathers to enter an appearance and contest an adoption. But again, there is a distinction between "fraud . . . of an adverse party" and "fraud upon the court." Stan was not trying to establish his right to notice or object to ongoing adoption proceedings. He was arguing to set aside a final adoption obtained through fraud. And when compelling circumstances exist, Rule 60(b)(6) authorizes trial judges to set aside judgments obtained by a fraud upon the court.

¶24. We find that Stan's petition was an independent action under Rule 60(b)(6). And as an independent action, the chancellor had authority to rule on Stan's petition based on fraud upon the court.

### III. Failure to Notice Hearing

¶25. Catherine's final argument attacks the notice issued for the April 21, 2015, hearing. She cites *Caples*, proposing that Mississippi Rule of Civil Procedure 81(d) was not properly followed. *Caples v. Caples*, 686 So. 2d 1071 (Miss. 1986). In *Caples*, we held that when a Rule 81(d) action, not heard on the merits, is continued without an order, the proper

12

procedure is to reissue Rule 81(d) summons, listing the new time and date the action will be heard. *Id*. at 1074.

¶26. Stan's petition originally was noticed for a November 21, 2014, hearing under Rule 81(d). But the actual hearing on the petition did not take place until April 21, 2015. The record does not show a reason for the delay. Catherine claims the chancellor either was required to issue an order continuing the hearing or for Stan to reissue his Rule 81(d) summons when the matter was not heard on November 21, 2014. But no continuance order was entered nor any additional Rule 81(d) summons issued. The record does, however, contain an agreed order setting the trial for April 21, 2015—signed by Catherine's attorney. Because the parties agreed to the setting, we find this fact distinguishable from *Caples.* Accordingly, there is no notice-based reversible error.

### Conclusion

¶27. Stan filed an independent action, conforming to Rule 60(b)(6), to set aside his son's adoption decree because of Katy's fraud. And Katy admitted her fraud upon the court. The chancellor was within his discretion to consider Stan's petition and set aside Matthew's adoption. We affirm the chancellor's judgment.

¶28. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR.**

13