# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00381-SCT

*IN THE MATTER OF THE ADOPTION OF D.A.S.,*
*A MINOR: B.N.*

*v.*

*K.P., INDIVIDUALLY AND AS NEXT FRIEND,*
*J.P., INDIVIDUALLY AND AS NEXT FRIEND,*
*AND K.F.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/17/2023 |
| TRIAL JUDGE: | HON. JOSEPH KILGORE |
| TRIAL COURT ATTORNEYS: | JAMES H. ARNOLD, JR. |
| | KATHRINE COLLINS CURREN |
| | TAMMY COPELAND SMITH |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JANE E. TUCKER |
| NATURE OF THE CASE: | CIVIL - ADOPTION |
| DISPOSITION: | AFFIRMED - 08/15/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    More than five years after the entry of a final decree in an adoption, the natural mother filed a petition to set aside the adoption based on fraudulent misrepresentations that the adoption would be "open." Because the petition is untimely, we affirm the decision of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2.    D.A.P. was born a twin on December 15, 2009, to B.M.N. and K.J.F. in Meridian,

Mississippi. K.S.P. and J.E.P., the paternal aunt and uncle of D.A.P. and residents of Texas, adopted D.A.P.'s twin brother on April 23, 2013.[1]

¶3.    D.A.P. would see her twin brother when he was in Mississippi and when she was in Texas for visits with their paternal grandmother. At some point, however, K.S.P. contacted B.M.N. about separation issues between the twins. K.S.P. and B.M.N. came to a mutual agreement that D.A.P. and her brother should spend more time together. K.S.P., J.E.P., and B.M.N. eventually agreed that K.S.P. and J.E.P. would adopt D.A.P.

¶4.    On April 28, 2017, K.S.P. and J.E.P. filed a petition for the adoption of D.A.P.[2] The petition stated that "[a]ll parties agree that the parental rights of the natural mother, namely [B.M.N.] and the father [K.J.F.] should be terminated as to the minor child as set forth in Section 93-15-103 et seq. of the Mississippi Code Annotated (1972 as amended)." The body of the petition did not refer to the adoption as being an "open" adoption. Yet the notary lines stated:

> This day personally appeared before me, the undersigned authority in and for the above named county and state, the above named [signatory], Individually and Next Friend, who after being sworn by me states on oath that all the matters, facts and things contained and set forth in the above and foregoing Petition for Open Adoption are true and correct to the best of [his/her] knowledge and belief.

K.S.P., J.E.P., and B.M.N. each signed the petition. Shortly afterward, K.J.F. signed a

---

[1]K.J.F. also was a Texas resident.

[2]D.A.P.'s initials at birth were D.A.S. After adoption, however, her initials were changed to D.A.P. Therefore, we reference her initials post adoption.

consent and joinder to adopt in which he relinquished all claims to D.A.P.

¶5. On June 28, 2017, K.S.P., J.E.P. and B.M.N. filed an Amended Petition for Adoption. Again, the body of the amended petition did not refer to the adoption as being "open," but the petition contained the same notary lines. K.S.P., J.E.P., and B.M.N. signed the amended petition, and K.J.F. signed a consent and joinder to adopt.

¶6. The Chancery Court of Neshoba County filed the final decree for adoption on July 6, 2017.

¶7. On July 7, 2021, B.M.N. filed in the chancery court a petition for obtaining access to adoption records and alleged that K.S.P. and J.E.P. had promised her that "any adoption would be an 'open adoption' and explained to [her] that an open adoption allowed [her] to continue to see [D.A.P.], visit with [D.A.P.], have in-person contact, telephone and video contact with [D.A.P.] and that they would NEVER stop [her] from having contact with [her] daughter." B.M.N. contended that "[a]fter continuous promises and coercion using the 'open adoption' area as an inducement to get me to sign the adoption papers, I agreed to sign the papers only if it was where I could have contact with her at any time." B.M.N. stated that she informed K.S.P.'s and J.E.P.'s attorney's staff member that she would not sign the adoption papers unless it was an open adoption and that the staff member stated "that was the agreement their office had been advised of by their clients . . . ." B.M.N. requested copies of signed and filed documents in the adoption proceedings.

¶8. On July 8, 2021, the chancellor denied B.M.N.'s request for access to the

3

aforementioned documents because the statute of limitations had run and because there was no good cause as required by Mississippi Code Section 93-17-25.[3]

¶9.    On August 15, 2022, B.M.N. filed a petition to set aside the adoption decree.[4] An amended petition was filed on September 2, 2022. B.M.N. contended that both K.S.P. and her attorney's staff had assured her that the adoption would be an open adoption and that B.M.N. would be able to be a part of D.A.P.'s life. Yet after the adoption, B.M.N. was allowed to visit D.A.P. once in December 2017 for approximately ten minutes. And in January 2018, K.S.P. informed B.M.N. that she was not allowed to talk to D.A.P. on the phone and was not to have any further phone contact. B.M.N. continued to write letters to D.A.P. and would receive responses, but contact eventually faded. In December 2021, K.S.P. allowed B.M.N. to visit with D.A.P. for an hour. B.M.N. stated that when she inquired about a subsequent visit, K.S.P. informed her that any visits were "on hold" because D.A.P. "was

---

[3]Section 93-17-25 provides:

All proceedings under this chapter shall be confidential and shall be held in closed court without admittance of any person other than the interested parties, except upon order of the court. All pleadings, reports, files and records pertaining to adopting proceedings shall be confidential and shall not be public records and shall be withheld from inspection or examination by any person, except upon order of the court in which the proceeding was had on good cause shown.

Miss. Code Ann. § 93-17-25 (Rev. 2021).

[4]A second amended petition was filed December 8, 2022. The chancery court found that B.M.N. had not been granted leave to amend her pleadings and never gave notice to the other parties of her intention to proceed under that petition. Therefore, the amended petition was the only petition to set aside that was properly before the chancery court.

having issues after returning from the December visit." B.M.N. also asserted that K.S.P. and J.E.P. had allowed D.A.P. to move out of their house for an extended period of time and to reside in K.J.F.'s house with the intention of relinquishing custody, either by means of a custody change or adoption in Texas.

¶10.    B.M.N. asserted that the adoption had been obtained by fraud, coercion, and misrepresentation. B.M.N. asked the chancery court to declare the decree of adoption null and void and to vacate the decree. B.M.N. additionally requested an order requiring K.S.P. and J.E.P. to show cause why they should not be enjoined from placing D.A.P. in the home of a person who has no legal rights. Lastly, B.M.N. requested a temporary restraining order, preliminary injunction, and permanent injunction ordering K.S.P. and J.E.P. to immediately return D.A.P. to her legal and physical custody and requested the costs and expenses for bringing the action.

¶11.    Attached to the petition were the following documents:

a.    An email sent April 19, 2017, from K.S.P. to B.M.N. with the updated petition for B.M.N.'s signature and an attachment to the email titled "Petition for Open Adoption 2-1-13.pdf"

b.    A second email from K.S.P. to B.M.N. dated April 25, 2017, containing the same document.

c.    Letters from D.A.P. to B.M.N. and to her half siblings in B.M.N.'s custody

d.    A certified letter dated July 11, 2021, from B.M.N. to K.S.P. that stated, in part:

When we had discussed y'all adopting [D.A.P.],

5

you told me and repeatedly assured me that the adoption would be an open adoption and that I would always be able to stay in contact with her. Additionally, you said I would be able to see her, have in person visits, talk with her on the phone, video chats with her and send letters and pictures back and forth with her. Y'all assured me that y'all would never keep her away from me. Why is it once the adoption went through, you only allowed me to see her once? I only got one phone call with her. After that when I called, you told me that I could not talk on the phone with her anymore. So why did y'all cut off all contact between me and her.

 e. An email dated July 15, 2021, from K.S.P. to B.M.N. that stated, in relevant part:

> So to answer your questions regarding a verbal agreement before [D.A.P.]'s adoption: yes, I told you that you could still talk/see her. But things change. You said you understood when I told you after the first few phone calls happened, I spoke with a counselor about [D.A.P.] and she mentioned it would be best for [D.A.P.] to communicate with hand written letters. As it gives her something to hold onto. I never should have had to request that you send [her twin brother] gifts or letters. But I did. So because you choose repeatedly to favor [D.A.P.], in letters, that was my reasoning for asking you not to reach back out if you can not be equal to them both.

¶12. K.S.P. and J.E.P. filed an answer and a motion to dismiss the amended petition to set aside the adoption. K.J.F. joined in K.S.P. and J.E.P.'s pleadings. K.S.P. and J.E.P. contended that B.M.N.'s petition contained "voluminous hearsay statements" and that the petition should be dismissed for violations of the Uniform Chancery Court Rules, Mississippi Rules of Civil Procedure, and Mississippi's adoption statute. K.S.P. and J.E.P. further argued

6

that B.M.N. failed to state a claim for relief and that her amended petition should be dismissed under Mississippi Rule of Civil Procedure 12(b)(6).

¶13.    The chancery court found probative that K.S.P. and J.E.P. had been the parents of D.A.P. for more than five years and that B.M.N. had not appealed the judgment of adoption.[5] The chancery court concluded that K.S.P., J.E.P., and D.A.P. would be prejudiced if the adoption were set aside on technical grounds and that not setting aside the adoption would be in the best interests of D.A.P. Therefore, the chancellor found that B.M.N. was not entitled to relief under any set of facts that could be proved in support of her claims.

¶14.    B.M.N. appealed and raised the following issue: whether the chancellor erred by dismissing B.M.N.'s petition in which it alleged that the consent to the adoption was obtained through a fraudulent and unenforceable promise to allow visitation.

## ANALYSIS

¶15.    "[A] motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a *de novo* standard." ***Moses v. Rankin Cnty.***, 285 So. 3d 620, 623 (Miss. 2019) (internal quotation marks omitted) (quoting ***Rose v. Tullos***, 994 So. 2d 734, 737 (Miss. 2008)). An argument that the complaint fails to

---

[5]B.M.N. first claimed that because D.A.P. had resided with K.S.P. and J.E.P. in Texas since May 19, 2017, the chancery court had lacked jurisdiction and venue at the time of the filing of the petition for adoption. The chancery court found that B.M.N. had signed both the original petition for adoption and the amended petition and that both had indicated that D.A.P. had lived in Neshoba County with B.M.N. at that time. It held that no jurisdictional defects existed that would negate the time bar. B.M.N. did not appeal the chancery court's jurisdictional decisions.

state a claim upon which relief can be granted "tests the legal sufficiency of the complaint." *Id.* (internal quotation mark omitted) (quoting *Rose*, 994 So. 2d at 737). "Thus, '[w]hen considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.'" *Id.* (alteration in original) (quoting *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1274, 1275 (Miss. 2006)).

¶16.    Mississippi Code Section 93-17-15 mandates that "[n]o action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof." Miss. Code Ann. § 93-17-15 (Rev. 2021). It is also "the public policy of the state that no adoption proceedings shall be permitted to be set aside except for jurisdictional defects and for failure to file and prosecute the same under the provisions of this chapter." Miss. Code Ann. § 93-17-17 (Rev. 2021). Therefore, "it becomes clear that the statute of limitations for challenging an adoption decree in Mississippi is (6) months after entry of the adoption decree except for jurisdictional defects and failure to file and prosecute the same under the adoption chapter of the Mississippi Code." *A.M.T.O. v. H.S.L. ( In re Adoption of M.D.T.)*, 722 So. 2d 702, 704 (Miss. 1998).

¶17.    B.M.N. asserts that K.S.P. and her attorney's staff member had assured her that the adoption would be an open adoption, that the notary lines in the adoption petition referenced an open adoption, and that the attachment K.S.P. had sent B.M.N. was titled an open

adoption. B.M.N. contends that "[i]t was not until six months after the adoption was finalized that [B.M.N.] was told that there would be no further contact with her daughter. And even more time passed before [B.M.N.] realized that Mississippi law does not provide for open adoptions."

¶18.    B.M.N. argues that an adoption may be set aside when there is a fraud upon the court. This Court previously has found a fraud upon the court "[w]hen consent for a supposedly 'uncontested' adoption is gained by intentionally concealing the identity of a known natural parent from the chancellor . . . ." *Doe v. Smith*, 200 So. 3d 1028, 1030 (Miss. 2016). There, the mother of the child had filed a joinder and consent to the adoption representing that she was unaware of her child's biological father and testified to the same at the adoption hearing. *Id.* at 1033. After finding out that the child was his, the child's natural father immediately contacted his attorney and petitioned the chancery court to reopen the child's adoption proceedings less than three months after the adoption was finalized. *Id.* at 1031. Further, the Court found that the mother's actions were "designed to deceive the court, by lying about and omitting material facts to trick the court into granting a supposed uncontested adoption . . . ." *Id.* at 1033.

¶19.    B.M.N. also cites *Stacks v. Smith*, 291 So. 3d 809, 812 (Miss. Ct. App. 2020), in which the natural father was incarcerated and his biological daughter was adopted without notice to him. The natural father filed a petition to set aside the adoption six months and seven days after the decree of adoption was entered. *Id.* The Court of Appeals held that "the

9

chancellor . . . is entrusted with the inherent authority to vacate judgments procured by fraud upon the court *notwithstanding . . . the adoption statute of limitations*." *Id.* at 816 (alterations in original) (internal quotation marks omitted) (quoting *Ill. Cent. R.R. Co. v. J.F. (In re Adoption of D.C.S.)*, 44 So. 3d 1006, 1013 (Miss. Ct. App. 2009)). Again, in *Stacks*, the natural father's petition "clearly alleged facts that would support a claim that the adoption was obtained by a fraud *upon the court*." *Id.* (emphasis added).

¶20.    In the instant case, we find no fraud upon the court. "A fraud upon the court is an intentional misdeed that 'vitiates a judgment' because 'the court is misled and deceived' about the facts it relies upon when administering the law." *Doe*, 200 So. 3d at 1032 (quoting *Trim v. Trim*, 33 So. 3d 471, 477 (Miss. 2010)). B.M.N. alleges that K.S.P. and her attorney's staff member informed her that the adoption would be an open adoption and that she would be allowed contact with D.A.P. after the adoption proceedings. But no sworn filing before the court or sworn testimony that the adoption would be an open adoption exists in the record. Although the notary line contains the term "open adoption," the adoption petition clearly stated that B.M.N.'s parental rights would be terminated and that K.S.P. and J.E.P. would adopt D.A.P. as their own child with "all the rights, powers, duties, [and] obligations" thereof. Mississippi Code Section 93-17-13 also provides that a final adoption decree terminates "all parental rights of the natural parent[.]" Miss. Code Ann. § 93-17-13(2) (Rev. 2021). Therefore, B.M.N.'s argument that the adoption petition should be set aside due

10

to a fraud upon the court lacks merit.[6]

¶21.    B.M.N. references ***McCormick v. State***, 354 N.W.2d 160, 161 (Neb. 1984), in which the state of Nebraska had commenced an action to terminate parental rights, and the parents signed a relinquishment. The Nebraska Supreme Court reversed the relinquishment based on a finding that the relinquishment was signed as the result of coercion. ***Id.*** at 161-62. The court found that

> the parents were forced to make a quick decision in the courthouse hallway shortly before the hearing in the action to terminate their parental rights was to commence. The parents were told that the court would most likely terminate their rights. The chance that they would be able to see their son though an "open adoption" was an attractive inducement to sign the relinquishment and abandon their contest of the termination proceedings.

***Id.*** at 163. It held that "[a] relinquishment conditioned upon the retention of some parental rights is invalid." ***Id.***

¶22.    This case can be distinguished. In ***McCormick***, the natural parents challenged the relinquishment less than six months after it was signed. In contrast, the adoption in this case

---

[6]In her appellate brief, B.M.N. references a GoFundMe created by K.J.F.'s wife in July 2022. The GoFundMe stated that the twins had decided to move in with K.J.F. and his wife and requested money to go toward "legal fees for making this official . . . ." As the chancery court stated:

> The natural father, [K.J.F.] is the sibling of [K.S.P]. Therefore, after the adoption, he is now the child's uncle. [K.S.P. and J.E.P.] as the parents of this child are free to allow the child to visit anyone they want, including the child's uncle. Clearly this is not grounds to set aside an adoption. Further, [B.M.N.] does not have standing to object in this regard as her rights to the child have been terminated.

was finalized on July 6, 2017. B.M.N. alleged K.S.P. allowed her to visit D.A.P. once in December 2017 for approximately ten minutes and that in January 2018, K.S.P. informed B.M.N. that she was not allowed to talk to D.A.P. on the phone and was not to have any further phone contact. Even so, B.M.N. waited until August 15, 2022, five years later, to file a petition to set aside the adoption decree.

¶23. Further, B.M.N.'s reliance on ***Monty S. v. Jason W.***, 863 N.W.2d 484 (Neb. 2015) is unpersuasive. There, the Nebraska Supreme Court found that "[u]ntil the Legislature acts to approve of these open adoption arrangements in a private adoption context, this court will not recognize them and will instead continue to hold that relinquishments signed with the promise of such an open adoption are invalid." ***Id.*** at 491. Yet, in that case, the relinquishment of rights was signed around July 2013, and the natural parents filed a petition for habeas corpus seeking return of the child in May 2014, less than a year later. ***Id.*** at 487.

¶24. Under Mississippi Rule of Civil Procedure 60(b), "the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) fraud, misrepresentation, or other misconduct of an adverse party[.]" M.R.C.P. 60 (b)(1). Rule 60(b) also states, however, that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken." M.R.C.P. 60(b).

¶25. This Court has held that "[s]etting aside adoption decrees is disfavored even before six months has expired." ***F.D.P. v. J.S.B. (In re Adoption of J.E.B.)***, 822 So. 2d 949, 951

12

(Miss. 2002). B.M.N.'s petition to set aside the adoption decree certainly was filed more than six months after the judgment. Additionally, B.M.N. failed to show that her petition, filed five years after the adoption was finalized, was made "within a reasonable time." M.R.C.P. 60(b). "The very nature of an adoption is to create a legally binding and unbreakable bond between the adoptive parents and the adopted child. . . . The adoption terminate[s] all parental rights . . . . To find otherwise creates impermanence and insecurity in the scheme of adoption." *In re Adoption of J.E.B.*, 822 So. 2d at 953.

¶26. B.M.N.'s petition was not filed within six months of the final decree of adoption. Moreover, five years passed before B.M.N. challenged the adoption, and she failed to provide any good cause for her delay. Therefore, the chancery court did not err by finding that B.M.N. was not entitled to relief under any set of facts that could be proved in support of her claims.

## CONCLUSION

¶27. Because B.M.N.'s petition to set aside the adoption decree was untimely, we affirm the decision of the chancery court.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**